**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1: 20-cv-01637

JAMES COX
Plaintiff,

v.

MOFFAT COUNTY SCHOOL DISTRICT RE-1,
Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

The Plaintiff, James Cox, by and through his attorneys, Miller & Law, PC, for his Complaint and Jury Demand against Defendant Moffat County School District RE-1 ("Defendant" or the "District"), states as follows:

**NATURE OF THE ACTION**

This action is brought to redress the District's violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (the "Rehabilitation Act"), and under section 504, 29 U.S.C. § 794, in particular, as well as the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 - 12117. Specifically, the Plaintiff alleges that the District discriminated against him based on his disability and retaliated against him by terminating his employment in response to his request for reasonable accommodations related to his disability, all in violation of the Rehabilitation Act and the ADA.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343 and the Rehabilitation Act, §§504 and 505, 29 U.S.C. §§794 and 794a. The unlawful employment practices alleged herein were committed within the jurisdictional boundaries of the United States

District Court for the District of Colorado and venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## ADMINISTRATIVE PREREQUISTIES

2. To the extent that there were procedural prerequisites for bringing Rehabilitation Act claims, Plaintiff complied with any such procedural prerequisites for bringing this lawsuit by timely pursuing an administrative charge of employment discrimination before commencing this litigation.

3. In October 2018, within 300 days of the date of his August 1, 2018 termination, Plaintiff submitted a charge of employment discrimination and retaliation to the Colorado Civil Rights Division and the United States Equal Employment Opportunity Commission ("EEOC").

4. By notice dated March 6, 2020, Plaintiff was issued a Dismissal and Notice of Right to Sue ("Notice") by the EEOC.

5. Plaintiff's Complaint in this matter has been filed within ninety (90) days following his receipt of the Notice.

6. Plaintiff has satisfied any procedural prerequisites for suing the District in federal court.

## PARTIES

7. Plaintiff James Cox ("Mr. Cox") is an individual resident of the state of Colorado with a residential address of 1250 Lincoln Street, Craig, Colorado 81625.

8. Defendant Moffat County School District is a Colorado state school district that owns and operates a system of public schools in Moffat County, Colorado. The District is a political subdivision of the State of Colorado, and it has its principal place of business at 600 Texas Ave., Craig, Colorado 81625.

9. The District employs more than 15 employees in Colorado.

## GENERAL ALLEGATIONS

10. Mr. Cox was hired by the District as a Lead Mechanic in September 2013.

11. Mr. Cox is protected by the provisions of the Rehabilitation Act, as well as by the provisions of the ADA.

12. During his employment with the District, following the retirement of the previous Lead Mechanic and after the Mechanic's Helper had been injured on the job, there was a period of almost one full year during 2013-2014 where Mr. Cox was the only mechanic employed by the District to service its fleet of school busses.

13. During that approximately one-year period in 2013-2014, as well as during the two years that followed, Mr. Cox' services were also furnished to the Hayden School District pursuant to a contract between the two districts.

14. Several years into his employment with the District, at a time when he was earning $20.91 per hour as a Lead Mechanic, Mr. Cox was injured on the job on January 19, 2017.

15. Mr. Cox sustained his injuries when he was called into work to rescue a school bus that had slid off a county road; while he was fixing the school bus on January 19, 2017, Mr. Cox slipped and fell on the ice, severely injuring his back (the "Incident").

16. Mr. Cox thereafter applied for workers' compensation benefits.

17. As a result of the Incident, Mr. Cox has suffered from severe injuries to his back at all subsequent times relevant to this Complaint.

18. Notwithstanding his injuries, Mr. Cox returned to work approximately one week after the Incident.

19. Mr. Cox does not dispute that, following the Incident, he was unable to perform certain essential functions of the Lead Mechanic position following the Incident, or that the Lead

Mechanic position is physically demanding and requires strength, flexibility and stamina; however, Mr. Cox generally was able to perform the essential functions of the position, and he did so during various periods thereafter.

20. The District rehired a "temporary mechanic," Kyle Bechole, for several months during the summer of 2017, until he quit in early August 2017.

21. When the Head Mechanic's Helper, Jordan Todd, quit approximately one month later, Mr. Cox was left as the only Mechanic on staff for the District for the next several months, during a time that he was still on light duty restriction.

22. On November 30, 2017, the District hired Clint Dixon as a Mechanic.

23. Concurrently with Mr. Dixon's hiring, the District demoted Mr. Cox to what the District refers to as a "temporary" position and a "desk job," entitled "General Vehicle Service Technician/Head Mechanic's Helper" (the "New Position"), commencing on December 1, 2017.

24. In the New Position, Mr. Cox was paid only $17.54 per hour.

25. During the period that Mr. Cox worked in the New Position - which was not a "desk job" as the District maintains – he routinely performed hands-on duties akin to a Lead Mechanic, including performing mechanical repairs to busses and providing training to Mr. Dixon and Mr. Duncan.

26. Mr. Cox felt that, through his demotion, the District was attempting to force him to resign.

27. Mr. Cox complained about his demotion to the District, which he felt was a form of retaliation or harassment.

28. The District then hired Steve Duncan on a temporary basis at the end of 2017 to serve as a Mechanic's Helper.

29. On March 21, 2018, Mr. Cox went on unpaid leave because he was in so much pain from his back injuries.

30. By July 2018, Mr. Cox had exhausted all of the leave available to him under District's School Board Policy and the Family and Medical Leave Act.

31. In early July 2018, while he was still on leave, Mr. Cox informed the District that he would need to undergo a procedure to have his back fused on July 23, 2018, and that he would be unable to resume his duties for at least another six months.

32. According to the District, when it learned of Mr. Cox's upcoming procedure to have his back fused, and that he would be unable to resume his duties for at least another six months, the District made the decision to terminate Mr. Cox's employment, rather than granting him additional unpaid leave.

33. Accordingly, on August 1, 2018, just eight days after his surgery – and while Mr. Cox still had an open workers' compensation case - the District terminated his employment.

34. The termination occurred just one month before Mr. Cox would have accumulated five (5) years of earned service credit for the District, a milestone that would have entitled him to the Colorado Public Employees' Retirement Association ("PERA") retirement benefits.

35. Mr. Cox's termination was at least the third such recent termination effectuated by the District; employees Shirley McCarthy and Tami Chadwick both had been recently terminated (directly or constructively) by the District after suffering work-related injuries.

36. According to the termination letter issued to Mr. Cox, the District could not "reasonably grant additional leave for six-months or longer because the District cannot keep its school bus fleet in a safe and fully operational condition for that lengthy period of time with only one mechanic on staff. Even if you were able to resume clerical or desk work sooner, the District

would still need to continue hiring temporary help to perform the essential bus maintenance and repair functions of your position until you could resume your full duties sometime next year. This is not an acceptable solution for the District."

37. The District further maintained that there were no other available positions for which Mr. Cox was qualified and to which he was able to be transferred; according to the District, the only available position was bus driver, a position which Mr. Cox advised that he would be unable to fulfill due to his health restrictions.

38. Notwithstanding that he temporarily was unable to perform his job, the District could have continued to reasonably accommodate Mr. Cox in August 2018 in the same or similar fashion as it had previously done.

39. Mr. Cox's extended post-injury employment history with the District reflects the existence of one or more available reasonable accommodations that the District could have continued to make for him.

40. In particular, Mr. Cox had remained in his position of Lead Mechanic throughout most of 2017 – and in fact was the only Mechanic on staff for several months during the fall of 2017 – and in his New Position during the eight-month period (from December 2017 through July 2018) leading up to his termination.

41. As of July 2018, Mr. Cox' physician had indicated that an allowance of time for medical care or treatment would be necessary for Mr. Cox in the wake of his upcoming back surgery; such an allowance was a means of reasonable accommodation that the District could have made for Mr. Cox, particularly on an unpaid basis.

42. Upon information and belief, there were additional means of reasonable accommodation for Mr. Cox that were available to the District, in lieu of terminating his employment.

43. Although the District contends that it would have been unreasonable or infeasible for the District "to continue to bear the expense" of hiring temporary help (the cost of which has not been identified by the District) to perform the essential functions of Mr. Cox's position while he remained on unpaid leave, the District thereafter continued to expend resources on a local independent contractor, Big Three Auto Repair & Leatherworks/Pat Duzik, who handled these same functions for the District in a more costly fashion.

44. One month after Mr. Cox' termination, on September 1, 2018, the District hired Mr. Duncan on a permanent basis as a Mechanic's Helper.

45. Upon information and belief, the District's decision to terminate Mr. Cox's employment was in retaliation for his requests for reasonable accommodation for his disability, his complaints about being discriminated against on the basis of his disability and/or his application for workers' compensation benefits.

46. Particularly given the District's prior mistreatment of other employees who have disabilities or who have sought reasonable accommodation, complained about the District's lack of reasonable accommodation and/or workers' compensation benefits, upon information and belief, the District views such employees as a liability, and it targets employees like Mr. Cox for retaliation and/or termination.

47. Upon information and belief, the District kept Mr. Cox on its payroll during 2017-2018 for no other reason than to train his replacements.

48. As a direct and proximate result of the District's discrimination and retaliation, Mr. Cox was substantially damaged, including through the loss of his ability to generate an income.

## CLAIMS FOR RELIEF

### First Claim For Relief
### Discrimination in Violation of the Rehabilitation Act

49. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

50. The District is an entity that receives federal financial assistance and is a covered entity for purposes of §504 of the Rehabilitation Act; as such, the District is prohibited from discriminating against employees on the basis of an actual or perceived disability.

51. The ADA, at 42 U.S.C. § 12132, extends the nondiscrimination rule of Section 504 of the Rehabilitation Act to services provided by any "public entity," without regard to whether the entity is a recipient of federal funds.

52. At the time of his termination, Plaintiff had a disability, in that he had severe work-related back injuries which substantially limited one or more of his major life activities and/or major bodily functions and the District perceived him to have a disability.

53. The District violated section 504 of the Rehabilitation Act, 29 U.S.C. §794, by intentionally discriminated against Plaintiff on the basis of his actual disability, his perceived disability and/or his record of impairment by demoting him, harassing him, failing to reasonably accommodate his disability, denying him an additional leave of absence and/or time off from work, and/or terminating his employment.

54. The District's discriminatory actions included, but were not limited to: (i) deliberately targeting Plaintiff for demotion, harassment and termination as a result of his disability, (ii) limiting, segregating, or classifying Plaintiff in a way that adversely affected his

opportunities or status because of his disability; (iii) utilizing standards, criteria, or methods of administration that had the effect of discrimination on the basis of disability; (iv) failing to make reasonable accommodations for the known temporary physical limitations of Plaintiff, an otherwise qualified individual employee with a disability, despite the fact that doing so would not have imposed an undue hardship on the operation of the District's business; and/or (v) denying employment opportunities to Plaintiff based on the District's need to make reasonable accommodations for his temporary physical impairments.

55. The District's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

56. As a consequence of the District's discrimination, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

57. As a result of the District's discrimination, Plaintiff has suffered damages, including but not limited to the loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

**Second Claim For Relief**
**Retaliation in Violation of the Rehabilitation Act**

58. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

59. Plaintiff was subjected to retaliation by the District for requesting reasonable accommodations for his disability, as well as for having engaged in opposition to discrimination and harassment, including being terminated from his employment for complaining about the discriminatory treatment and harassment to which he was subjected.

60. Plaintiff's protected conduct in opposition to disability-based discrimination and harassment was a motivating factor in the District's retaliatory conduct, including its decision to terminate Plaintiff's employment.

61. The District's retaliation complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

62. As a consequence of the District's retaliation, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

63. Plaintiff has been damaged by the District's retaliation inasmuch as he has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against the District, and award him the following relief, to the fullest extent allowed by law:

i. Actual monetary damages for all injuries suffered by Plaintiff in an amount to be determined at trial, including but not limited to, damages for lost past and future wages and employment benefits;
ii. Compensatory damages on all claims allowed by law and in an amount to be determined at trial;
iii. Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;
iv. Pre- and post-judgment interest at the highest lawful rate; and
v. Any further relief that this court deems just and proper, and any other relief as allowed by law.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 5th day of June 2020.

MILLER & LAW, PC

**/s/ David J. Meretta**
David J. Meretta, No. 44409
1900 W. Littleton Blvd.
Littleton, CO 80120
(303) 722-6500
(303) 722-9270 fax
djm@millerandlaw.com

ATTORNEYS FOR PLAINTIFF